NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3213

ASOKKUMAR PAL,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

Asokkumar Pal, of Gaithersburg, Maryland, pro se.

Michael N. O'Connell, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director.

Appealed from:    Merit Systems Protection Board

NOTE:  This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

2008-3213

ASOKKUMAR PAL,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

Petition for review of the Merit Systems Protection Board in
DC0432070158-I-2.

_____

DECIDED:  December 8, 2008
_____

Before LOURIE, CLEVENGER and LINN, Circuit Judges.

CLEVENGER, Circuit Judge.


Asokkumar Pal ("Pal") seeks review of the final decision of the Merit Systems
Protection Board ("Board") sustaining his removal from the position of patent examiner,
review quality assurance specialist.  Pal v. Dep't of Commerce, No. DC0432070158-I-2
(Feb. 6, 2008).  We affirm.

I

The key component of Pal's job, for purposes of this appeal, consisted of
reviewing the quality of patent examination work products generated by patent

examiners, who, like Pal, work in the United States Patent and Trademark Office ("agency") within the Department of Commerce. This component of Pal's work involved his close review of the actions of patent examiners who regularly reject or accept claims asserted by patent applicants. After review by Pal, he was expected to conclude either that a particular examiner had correctly decided the issues before him, or had made errors in deciding the issues before him.

The agency regularly conducts performance appraisals of the work of its employees. As part of the appraisal of Pal's work during fiscal 2005 and 2006, the agency assessed the review work done by Pal under the critical element "Quality Monitoring." The purpose of reviewing Pal's work under this particular critical element was to determine whether he had correctly judged the work of the particular examiners. In other words, Pal's job was to grade the work of particular examiners, and the performance appraisal of Pal's work graded whether Pal's work was correct or contained error.

On December 8, 2005, Pal's second-line supervisor, Paula Hutzell ("Hutzell") gave Pal a written warning that his performance for fiscal year 2005 was unacceptable in two critical elements, "Quality Monitoring" and training. As a result of this unsatisfactory rating, the agency placed Pal in a performance improvement period ("PIP"), which would take place from December 11, 2005 to March 18, 2006. The object of the PIP was to give Pal the opportunity to perform at a level above "Unacceptable." Pal understood that to avoid an "Unacceptable" grade for his work during the PIP, he could not have an error rate greater than 25 percent.

In order to grade an employee's performance during a PIP, the agency practice at the time was to judge the work done during the entire PIP period by taking a random sample of work done during the PIP on individual cases of decisions by particular examiners. During the PIP period, Pal completed review of 139 cases, representing decisions made by examiners on claims made by patent applicants. By random selection, 16 of Pal's reviews were selected for testing. Each of the cases in which Pal had found fault with an examiner was reviewed, and a sample of cases in which he found no fault was identified by simply picking cases by pointing to the files. Diana Dudash ("Dudash"), Pal's first-line supervisor, and a colleague, Anthony Caputa ("Caputa") reviewed the 16 randomly selected cases. They determined that Pal committed six errors in the 16 cases, yielding an unacceptable error rate of 37.5 percent.

If action was to be taken against Pal for failure of the PIP, the task of proposing official would fall to Hutzell, Pal's second-line supervisor. Dudash provided Hutzell with a summary of the work she had graded in the random sample. Hutzell made an independent review of that work and agreed with Dudash's assessment. Hutzell also reviewed the assessment by Caputa that Pal had committed six errors, as well as the assessment of David Lacey, who also reached the same conclusion. Hutzell proposed that Pal be removed from his position because he failed the PIP.

Margaret A. Focarino ("Focarino"), Deputy Commissioner for Patent Operations, was the deciding official for Pal's case. Focarino reviewed Hutzell's detailed proposal of removal, as well as Pal's written and oral replies. Focarino asked Steven Griffin

("Griffin"), a Supervisory Patent Examiner, to review in detail the six identified errors. Griffin did so, and concluded that the assignment of error was reasonable.

On November 2, 2006, Focarino acted on Hutzell's recommendation. Although she concluded that Pal had improved his performance on the critical element of training, she decided that Pal's performance under the critical element of "Quality Monitoring" was unacceptable. She therefore notified Pal that effective November 3, 2006, he would be removed.

II

Pal appealed his removal to the Board. The administrative judge ("AJ") assigned to the appeal conducted a hearing, at which Pal was represented by counsel. After hearing the evidence, the AJ concluded that the PIP had been properly conducted and that substantial evidence supported the determination that Pal's performance during the PIP had been unacceptable due to the error rate assigned to the random sample of his work. The AJ's decision upholding the agency's removal action is dated July 27, 2007. Pal sought review of the AJ's decision by the full Board, which denied his petition on February 6, 2008, thus making the AJ's decision the final decision of the Board. Pal then timely sought review in this court.

III

We must affirm the final decision of the Board unless we determine that it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 7703(c). Facts found by the Board must be supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brewer v. U.S. Postal Serv.,

647 F.2d. 1093, 1096 (Ct. Cl. 1981) (quoting <u>Consolidated Edison Co. v. Nat'l Labor Relations Bd.</u> 305 U.S. 197, 229 (1938)). This is a highly deferential standard of review: if the Board rests its decision on evidence that could lead a reasonable mind to reach the conclusion reached by the Board, we must accept the Board's decision.

On appeal to this court, Pal mounts essentially the same arguments he raised unsuccessfully before the Board. He contests the PIP process itself, by alleging fatal flaw in the process because only a sample of his work was graded, and further that the method of selecting the sample was scientifically inadequate. The Board rejected Pal's challenge to the process because there is no requirement that the agency must use any particular method for picking which work performed in a PIP will be subject to test. We agree with the Board, and we see nothing unfair or unlawful in the way the agency selected which of Pal's work during the PIP period would be tested.

As part of his challenge to the overall PIP process, Pal also contends that the deciding official (Focarino) should not have been allowed to decide his fate, because she admitted a lack of background in the technology Pal was working with. Pal assigns reversible error to the fact that Focarino relied on Griffin, who possessed the requisite science background. Focarino testified that she reviewed the proposed removal letter and Pal's oral and written replies. She candidly admitted that she relied on Griffin. Pal points to no law that prevents a deciding official from seeking advice of someone more familiar with the science at issue. We see no error where a deciding official seeks assistance to understand the matter at hand.

Pal also contends that those who graded his work did not understand, and indeed misapplied, the law he applied when he graded the individual examiners. In

other words, Pal asserts that his judges were inadequate to the task, since they made errors in judging Pal's work. The substantial evidence standard of review stands in the way of Pal's criticism of his judges.

Dudash provided a detailed explanation of each of the six errors found in the 16 cases selected for grading. Dudash testified at length on the reasoning for her grade of error in the six instances, and others named above also testified that they were in agreement with Dudash. The Board found the testimony of Dudash and the others credible and sufficient for a reasonable mind to conclude that six errors had been committed.

Pal has provided the court with extensive briefs that present further arguments that challenge the PIP process itself and the judgments reached by those who judged his work and finally ordered his removal. We have reviewed each of those arguments with care. Pal's arguments present no reversible error. Substantial evidence shows that the process was fair and that on the record as a whole, a reasonable mind could reach the same conclusion as reached by the Board.

The Board expressed its sympathy for Pal as follows:

[I]t is extremely unfortunate that the agency could not have found another position for the Appellant, who seems to have many talents and has been a successful Federal employee for most of his lengthy career.

The Board, however, is without power to mitigate Pal's removal. The law is clear that when an employee fails a PIP, the agency has the sole discretion to decide whether to remove or demote the employee. See Lisiecki v. Merit Sys. Prot. Bd., 769 F.2d 1558, 1566 (Fed. Cir. 1985). Like the Board, we too are powerless to mitigate Pal's removal.

Because the Board's final decision is supported by substantial evidence and not contrary to law, we must affirm.

COSTS

No costs.